KEITH H. RUTMAN (CSB #144175)
402 West Broadway Ste 1560
San Diego, California 92101-8534
Telephone: (619) 237-9072
Facsimile: (760) 454-4372
email: krutman@krutmanlaw.com

Attorney for Plaintiff
WILLIAM DONALD PIXLER II

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM DONALD PIXLER II, | Case No. **'24CV1752 JAH  MSB** |
| v. | |
| CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, SDPD OFFICER RAYAS (#1680) and DOES 1-15, | COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL |
| Defendants. | |

COMES NOW Plaintiff WILLIAM DONALD PIXLER II, by and through his

attorney of record, and hereby alleges:

This lawsuit for money damages is brought pursuant to the provisions of 42

U.S.C. § 1983 due to violations by Defendants of Plaintiff's constitutional rights under

the Fourth and Fourteenth Amendments to the U.S. Constitution.  Supplemental claims

are also brought pursuant to California law.

**JURISDICTION**

1     Federal jurisdiction is founded upon the existence of a federal question, the Civil

Rights Act, 42 U.S.C. § 1983 and lies under 28 U.S.C. § 1331.  The remaining causes

of action arise under the supplemental jurisdiction of this Court and lie under 28 U.S.C.

§ 167.

**VENUE**

2     Venue in the Southern District of California is proper because the injuries to

WILLIAM DONALD PIXLER II occurred herein and further because the Defendants

are believed to reside in said district.

**PARTIES**

3     Plaintiff WILLIAM DONALD PIXLER II is and was at all material times mentioned herein a resident of the San Diego, in the State of California.

4     Defendant CITY OF SAN DIEGO ("the CITY") is and was at all times mentioned herein a political sub-division of the State of California and is the employer of Defendants RAYAS and DOES 1-5, who performed all of the herein alleged acts for, and in the name of, the CITY.

5     Defendant COUNTY OF SAN DIEGO ("the COUNTY") is and was at all times mentioned herein a political sub-division of the State of California and is the employer of Defendants DOES 6-15, who performed all of the herein alleged acts for, and in the name of, the COUNTY.

6     Defendant SDPD OFFICER RAYAS (#1680) is and was at all times mentioned herein employed by the CITY OF SAN DIEGO as a police officer and is charged with administering and maintaining laws in the jurisdiction of the CITY OF SAN DIEGO and State of California.  Thus, he was the agent, servant, and/or employee of the CITY OF SAN DIEGO and in doing the acts herein alleged, was acting within the course and scope of his agency and/or employment, and with the permission, consent and authority of the CITY OF SAN DIEGO.  The acts of this Defendant were also done under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of California.

7     At all material times mentioned herein, Defendant DOES 1-15 were either duly constituted law enforcement officers or civilian personnel employed by either the CITY OF SAN DIEGO or the COUNTY OF SAN DIEGO charged with administering and maintaining laws in the jurisdiction of the CITY OF SAN DIEGO, COUNTY OF SAN DIEGO and State of California.  Thus, they were the agents, servants, and/or employees of the CITY OF SAN DIEGO or COUNTY OF SAN DIEGO and in doing the acts herein alleged, were acting within the course and scope of their agency and/or

employment, and with the permission, consent and authority of the CITY OF SAN DIEGO and/or COUNTY OF SAN DIEGO. The acts of Defendants DOES 1-15 were done under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of California. Defendants DOES 1-15 are sued individually and in their capacity as employees of the CITY OF SAN DIEGO or COUNTY OF SAN DIEGO.

8      Prior to the filing of this complaint and on or about February 21, 2024 and February 23, 2024, respectively, Plaintiff filed written claims with the COUNTY OF SAN DIEGO and CITY OF SAN DIEGO for the injuries alleged herein as required by, inter alia, California Government Code §§ 905, 905.2 and 945.4. Because neither the CITY nor COUNTY responded within the required time frame, the claims were deemed rejected by operation of law in accordance with California Government Code § 912.4(a). The administrative claims process need not be followed as a prerequisite to bringing suit as to the claims brought under 42 U.S.C. § 1983. Patsy v. Board of Regents, 457 U.S. 496 (1982); Heath v. Cleary, 708 F.2d 1376, 1378 (9th Cir. 1983).

## FACTS COMMON TO ALL CLAIMS

9      Biometric Identifiers Matched To Fingerprints: Years ago, law enforcement developed means to reliably identify a person to the exclusion of others who share the same or similar names, birthdates, physical characteristics, and the like. One such means was the assignment of an unique numerical identifier to a person matched to the person's fingerprints. Three such biometric identifiers are described below:

10     CII numbers: The California Department of Justice ("CDOJ") assigns a unique identifying number to every person booked into a California jail. This number, called a "CII number," is matched to the arrestee's fingerprints. Unless previously created, a CII number is generated upon a person's booking into any California jail; thereafter, the same CII number is used for every subsequent booking of that arrestee. CDOJ will record all subsequent bookings of that person under the same CII number even if the person uses different names, birthdates social security numbers, driver's license

3

numbers etc. CDOJ can do so because a CII number is matched to the arrestee's fingerprints which, of course, are unique and unchanging. CII numbers are also assigned to persons who, for reasons of employment, must be fingerprinted and those prints reported to the CDOJ. For instance, all California lawyers, judges and police officers have CII numbers.

11    A major use of CII number is for generating its subject's criminal history, or "rap sheet," as maintained by the CDOJ. People v. Martinez, 22 Cal.4th 106, 121, 131 (2000) (example of how CII number was used to obtain a person's criminal history). The criminal history will reflect the subject's known full name, aliases, birthdate, residential addresses, the subject's unique identifiers, such as social security, driver's license and FBI number (described below), along with the subject's arrest, prosecution and conviction history, including sentences of incarceration in a county jail or state prison.

12    FBI numbers: An FBI number is essentially the same as a CII number only at the national level. The FBI assigns a criminal record, a unique number, to an individual whose arrest is reported to the FBI. Plaintiff is informed and believes and based thereon alleges that anyone convicted in California of a felony, has the fact of that conviction (date, charge, sentence, etc.) reported to the FBI. Plaintiff is informed the FBI tracks all felony convictions from any jurisdiction within the United States under a person's unique FBI number.

13    Plaintiff is informed and believes and based thereon allege that a set of fingerprints is a more unique biometric identifier than DNA. That is, while identical twins share the same DNA profile, the twins will nevertheless have non-matching fingerprints.

14    Plaintiff is informed and believes and based thereon alleges that law enforcement considers biometric identifiers, like CII or FBI numbers, to be far more reliable for identification purposes than matching name(s), birth date(s), and non-unique physical descriptors (sex, ethnicity, hair/eye color, etc.).   Plaintiff is informed and believes and

based thereon alleges that if law enforcement personnel observe that two different warrants identify their respective subjects by the same CII number, law enforcement will consider the two warrants to refer to the same person even though the warrants' other identifiers (names, birth dates and non-unique physical descriptors) do not match. Law enforcement officials also know that CII and FBI numbers are proxies for fingerprints. Hence, absent an breakdown or error in the system, two different CII numbers (or FBI numbers) means two different people.  Plaintiff is informed and based thereon alleges that the facts stated above are well known to those in the law enforcement community.

15    Livescan: Plaintiff is informed and believe that within a matter of a few minutes during the course of booking someone into jail, law enforcement agencies obtain a person's identification information and biometric identifiers. Law enforcement does so using a process called Livescan. When an arrestee is booked into a California jail, such as the SAN DIEGO COUNTY Jail, in lieu of manually "rolling" prints, the jailer takes an electronic image of the arrestee's fingerprints. The arrestee's fingers are placed on an imaging machine's glass plate; the image is then transmitted electronically to the CDOJ. Within a few minutes the CDOJ responds in one of two ways. If the arrestee's prints are already on file, the arrestee's CII number and associated identifiers, along with the arrestee's criminal history if requested, are sent to the arresting agency; if no match is made with existing fingerprints, the CDOJ assigns a newly created CII number and so informs the arresting agency.

16    Warrant Databases: Plaintiff is informed and believes and based thereon alleges that law enforcement uses local, state and national law enforcement databases to check for outstanding warrants on persons the police detained. These law enforcement warrant databases are designed to capture, if known, the warrant subject's CII and FBI numbers. The CDOJ instructs California law enforcement agencies to include, if known, the warrant subject's CII and FBI numbers. The databases are also designed to record information about persons wrongly arrested on warrants meant for another, and

the CDOJ instructs California law enforcement agencies to record such information into the database.

17     Plaintiff is informed and believes and based thereon alleges that defendant SAN DIEGO COUNTY maintains a computer-based system depository for all warrants issued by SAN DIEGO COUNTY courts (and can also access out of county and out of state warrants).

18     When a SAN DIEGO COUNTY court issues an order for an arrest warrant, the actual warrant exists in electronic form only. That is, the court does not issue, on paper, arrest warrants. Instead, taking the information from the court's order issuing the warrant,  SAN DIEGO COUNTY personnel input the information into various law enforcement databases, including the SAN DIEGO COUNTY computer-based depository system.

19     Plaintiff is informed and believes and based thereon alleges that the SAN DIEGO COUNTY computer-based depository system is designed to capture and make available to law enforcement agencies identification data on a warrant's subject, including but not limited to name, date of birth, ethnicity, height, weight, sex, eye and hair colors, and unique identifier numbers such as CII, FBI, driver's license, and social security.

20     Plaintiff is informed and believes and based thereon alleges that the SAN DIEGO COUNTY computer-based depository system is also designed to capture information showing that one or more individuals has been exonerated or cleared as being the warrant's intended subject, and that person can be identified by his unique biometric identifiers such as CII and FBI numbers.

21     Plaintiff is informed and believes and based thereon alleges as follows: whenever a government entity desires to determine if a detainee or arrestee is the subject of an outstanding warrant issued by a SAN DIEGO COUNTY court, the SAN DIEGO COUNTY computer-based depository system is queried. Based upon information retrieved from the SAN DIEGO COUNTY computer-based depository

system, the government entity will then determine if the person is or is not the warrant's subject. In the case of a SAN DIEGO COUNTY-based law enforcement agency that desires to determine if a person in its custody is the subject of a SAN DIEGO COUNTY warrant, the agency relies on the SAN DIEGO COUNTY computer-based depository system information.

22     Plaintiff is informed and believes and based thereon alleges that when a SAN DIEGO COUNTY court issues a bench warrant, the information about the warrant and its subject is forwarded by SAN DIEGO COUNTY court personnel to the SAN DIEGO COUNTY Sheriffs Department and its data systems department. That department is responsible for entry of the warrant data into the SAN DIEGO COUNTY computer-based depository system. The department can also easily and within seconds include additional identifying information about a warrant's subject, even if the information is acquired after a warrant's original issuance. The SAN DIEGO COUNTY Sheriffs Department can also easily and quickly update the SAN DIEGO COUNTY computer-based depository system, after a warrant's original issuance, to show that a particular person has been identified as not the warrant's subject.

23     Plaintiff is informed and believes and based thereon alleges that if a hard copy or paper record of the warrant is needed, it is supplied via either a warrant information sheet or a warrant abstract. The warrant information sheet contains the SAN DIEGO COUNTY computer-based depository system information regarding the warrant's subject, descriptors, bail amount, court issuing the warrant, and so on. The warrant abstract is generated upon an agency's booking of an arrestee on the warrant. Once the warrant abstract is generated, the SAN DIEGO COUNTY computer-based depository system classifies the warrant as having been executed. That is, thereafter the SAN DIEGO COUNTY computer-based depository system will not list the warrant as being outstanding.

24     <u>Wanted Person System</u>: Plaintiff is informed and believes and based thereon alleges that since 1971, CDOJ has maintained a Wanted Persons System ("WPS").

WPS is a computer database containing records of arrest warrants issued by California courts. Its function is to alert California law enforcement agencies about possible arrest warrants issued from any California state court.

25     Plaintiff is informed and believes and based thereon alleges that a California law enforcement agency uses WPS to locate warrants issued by a California court in a county outside the county in which the agency is based.

26     Plaintiff is informed and believes and based thereon alleges that a law enforcement agency queries WPS by using a subject's name and physical descriptors or by using numeric identifiers.  Examples of numeric identifiers are social security number, driver's license, FBI and/or CII number.

27     Plaintiff is informed and believes and based thereon alleges that the CDOJ has instructed and trained California law enforcement agencies that a match made on a WPS record does not, by itself, provide sufficient grounds to arrest a person; instead, the agency that is detaining a person based on information obtained via WPS that the person may be the subject of a warrant, must contact the agency responsible for entry of the warrant information into WPS (the "originating agency"), to confirm the existence of the warrant and its application to an arrestee. The originating agency, in turn, must respond to a confirmation request within a specified, short time frame.

28     Plaintiff is informed and believes and based thereon alleges that the CDOJ instructs California law enforcement agencies that when an originating agency knows the warrant subject's unique numeric descriptors – driver's license, social security, FBI, and/or CII number – the agency should input these identifiers into WPS. CDOJ so instructs, Plaintiff is informed, because inputting these identifiers will substantially reduce the likelihood that the wrong person will be detained or arrested on the warrant while inputting the data takes but a few seconds of additional keystrokes.

29     Plaintiff is informed and believes and based thereon alleges that since two or more persons may share the same (or similar) names, birth dates and physical descriptors, CDOJ instructs California law enforcement agencies that when a hit is

8

made in WPS, a positive identification of the arrestee with the warrant's subject must be accomplished through the exchange of fingerprint facsimiles and other descriptors during the confirmation discussions between the WPS record contributor [i.e., originating agency] and the holding [i.e., arresting] agency.

30 <u>Criminal Histories</u>: Plaintiff is informed and believes and based thereon alleges that pursuant to California law, any person who has been charged with a felony crime and who was (a) booked on that felony charge or (b) appeared in court response to that charge, will have been fingerprinted. Furthermore, Plaintiff is informed and believes and based thereon alleges that pursuant to California law, the person's fingerprints will have been forwarded to CDOJ so that CDOJ can and will record, under the person's CII number matched to his fingerprints, the fact of the booking on that felony charge. In other words, the felony booking will be reflected on that person's CDOJ criminal history as verified by his fingerprints.

31 Plaintiff is informed and believes and based thereon alleges that law enforcement officials also know that if a person is arrested on a felony bench warrant issued by a California court, if the person is in fact the true subject of the felony warrant, at a minimum there should be on the person's CDOJ criminal history the fact of an earlier booking on the felony charge. Consequently, if the CDOJ criminal history reflects no felony booking consistent with the felony bench warrant, law enforcement officials know or should know the absence of the prior felony booking is prima facie evidence that the warrant's subject must be someone else.

32 Plaintiff is also informed and believes and based thereon alleges that the warrant subject's CDOJ criminal history ordinarily reflects the underlying prosecution that led to the warrant's issuance; if the history does not reflect such prosecution, it is highly likely that the arrestee is not the person the warrant seeks.

## STATEMENT OF FACTS

33 WILLIAM DONALD PIXLER II has been diagnosed with bipolar schizophrenia for at least 10 years. At age 15, he also underwent brain surgery for a subdural

infection. After his diagnosis, he has had several encounters with law enforcement. He was never arrested or booked but rather was placed on several 5150 holds in a psychiatric facility(ies).  On more than one occasion, his commitment was reviewed by a judge, so there is an official record.

34     On August 22, 2023, there was a fight outside Maverick's Bar in Pacific Beach. A man and his friend, whom PIXLER did not know, jumped PIXLER and stole his wallet and cell phone. PIXLER walked to the boardwalk and made contact with an unknown San Diego police officer whom he now believes to be Officer RAYAS #1680. This contact, and subsequent arrest, is referenced as SDPD Case Number 23036269. Body worn camera footage is believed to exist.  The encounter with the 2 men triggered a mental health reaction, and PIXLER was unable to properly provide any identifying information to Officer RAYAS. It is unknown if Officer RAYAS was acting in tandem with any other CITY OF SAN DIEGO police officers (DOES 1-5).

35     Having a mental health crisis itself is not a crime in California. However, individuals experiencing a mental health crisis may be subject to involuntary confinement or treatment if they pose a danger to themselves or others, or are gravely disabled as a result of their mental disorder. Under California Welfare and Institutions Code § 5150, a person can be taken into custody for up to 72 hours for assessment, evaluation, and crisis intervention if they meet these criteria. They are not normally booked into a jail facility, but rather taken to a mental health treatment center.

36     Somehow Officer RAYAS determined and/or decided that PIXLER's identity was actually that of Michael Vincent Buckholz, age 51, and he was the subject of an active felony arrest warrant in San Diego Superior Court Case No. CPR131496. PIXLER was 33 years old at the time and was not the subject of any arrest warrant. PIXLER looks nothing like Michael Vincent Buckholz, nor does PIXLER have similar fingerprints or other biometric information.  PIXLER is 175 lbs. and 5'11. Buckholz is 210 lbs. and 6'2.

37     PIXLER was transported to the San Diego County Jail on Front St. by Officer

RAYAS. PIXLER does not know what information that Officer RAYAS gave the booking deputies (DOES 6-15). PIXLER's fingerprints and photograph were taken by unknown Sheriff's Deputies (DOES 6-15). Despite the fact that PIXLER looks nothing like Michael Vincent Buckholz, nor does PIXLER have similar fingerprints or other biometric information or physical characteristics, PIXLER was nevertheless booked on the warrant as Michael Vincent Buckholz under SDCJ booking #23734047. PIXLER was placed in general population and not given any immediate medical treatment for his bipolar schizophrenia.

38     On or about August 30, 2023, PIXLER was provided with a lawyer named Stephanie L. Ruiz, who was a Deputy Public Defender. She told him she had met with the judge regarding PIXLER's case (even though PIXLER did not have "a case.") PIXLER asked to speak to the judge directly and was not allowed to do so. Somehow, an admission of violating Michael Vincent Buckholz' probation on charges of Penal Code §. 496(a)(receiving Stolen Property) with a prison prior (Penal Code §. 667.5(b)) and a strike prior (Penal Code §. 667(b)(I), 1170.12 and 668) was subsequently entered by PIXLER, who was immediately sentenced to 6 months in jail. No one questioned his mental health, the apparent age and physical discrepancy, or his true identity.

39     On or about September 5, 2023, after his psychiatric condition was properly identified and treated, and PIXLER was given appropriate medication, PIXLER became lucid and thinking clearly. PIXLER told Sheriff's deputies that the name on his wristband,  Michael Vincent Buckholz, wasn't correct and gave them his true name. They did nothing about it and told him that WILLIAM PIXLER was simply an alias.

40     PIXLER was transferred to George Bailey Detention Facility on or about September 13, 2023 and remained in general population. On a date unknown, PIXLER was attacked by another inmate(s), punched in the eye and suffered a cut. Another inmate stepped on his wrist, causing a severe sprain. PIXLER was taken to Alvarado Hospital. They applied liquid stitches to the cut under his eye and examined his wrist and he was taken back to George Bailey Detention Facility the same day.  Ultimately,

PIXLER was transferred back to San Diego County Jail on 10/3/23, still under the name Michael Vincent Buckholz.

41      Meanwhile, PIXLER's parents were desperately trying to find him, as he lived at home and had never been this uncommunicative. PIXLER's father Dennis called the CITY OF SAN DIEGO police department to file a missing person's report. The person he spoke to was named Karen Gustafson. The missing person's case number is 23501972. PIXLER's father was told at one point that if PIXLER wound up in jail, he would be located based upon his fingerprints being taken and PIXLER's father would be informed. PIXLER's father was also trying to find out what happened to PIXLER's car, which had been stolen. PIXLER's parents kept calling the police and the jails looking for him.

42      It was difficult for PIXLER to make a phone call from jail as he was never able to set up a phone profile which would allow him to call anyone for help. An unknown deputy in SAN DIEGO COUNTY jail let PIXLER set up a phone profile on or about October 10, 2023 and PIXLER was able to call his parents for help. His father called SDPD and told them what had happened to PIXLER. A detective named Christopher Smith assisted PIXLER's father. PIXLER was released to the street on October 10, 2023 even though Detective Smith told PIXLER's father he would go to the jail and pick up PIXLER and transport him home. PIXLER does not know if the admitted revocation of Michael Vincent Buckholz' probation was rescinded.

43      For 3 months after PIXLER's release, the missing persons unit was still calling his father to see if PIXLER had been located. Upon the advice of counsel, PIXLER called the missing persons unit and told them what happened. They stopped calling.

44      As of September 16, 2024, PIXLER's Califoirnia Criminal History Report still lists an alias of Michael Vincent Buckholz, although  SDCJ booking #23734047 and the booking itself has been deemed to be uncorroborated due to non-matching fingerprints.

///

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**FOURTH AMENDMENT / FALSE ARREST**
**AGAINST RAYAS And DOES 1-5**

45      Plaintiff refers to and incorporates by reference Paragraphs 1 through 44 as though fully set forth herein.

46      In committing the acts alleged herein, Officer RAYAS and DOES 1-5 violated, without probable cause, reasonable suspicion, consent, exigent circumstances or other defense, Plaintiff's clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in his person from unreasonable government intrusion, including false arrest/unreasonable detention. These rights were clearly established at the time.  For these reasons, Plaintiff is entitled to seek damages pursuant to Title 42 U.S.C. §1983, et seq.

47      A reasonably prudent officer would have known that Plaintiff was not subject to arrest or detention.

48      By reason of the acts alleged above, Plaintiff did sustain great emotional distress and shock and injury to his person and nervous system, all to his damages in an amount to be proven at trial.

49      As a direct and proximate result of the acts and omissions alleged herein, the Plaintiff is entitled to general and special damages from Officer RAYAS and DOES 1-5 in an amount to be proven at trial.

50      In doing the acts alleged herein Officer RAYAS and DOES 1-5 acted maliciously and with reckless and callous disregard for the rights and feelings of the Plaintiff and by reason thereof the Plaintiff demands exemplary and punitive damages in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**FOURTH AMENDMENT / WRONGFUL INCARCERATION**
**AGAINST RAYAS And DOES 1-15**

51      Plaintiff refers to and incorporates by reference Paragraphs 1 through 44 as though fully set forth herein.

52     The imprisonment of Plaintiff on a warrant meant for another violated his Fourth Amendment right in that as alleged above, official and reliable law enforcement information, including reliable fingerprint matched identifiers and other information to which had or which they had easy access with virtually no appreciable effort or cost, excluded Plaintiff as the subject of the warrant on which he was incarcerated. Therefore, Plaintiff is entitled to recover damages for the wrongful imprisonment.

53     Plaintiff is alleging a Fourth Amendment violation based on <u>Manuel v. City of Joliet, Illinois</u>, 580 U.S. 357 (2017), where the Supreme Court held that the entirety of a person's wrongful pretrial detention may be challenged under the Fourth Amendment, i.e., that Amendment's protections do not cease once legal process before court commences.

54     In committing the acts alleged herein, Officer RAYAS and DOES 1-15 violated, without probable cause, reasonable suspicion, consent, exigent circumstances or other defense, Plaintiff's clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure in his person from unreasonable government intrusion, including wrongful incarceration. These rights were clearly established at the time. For these reasons, Plaintiff is entitled to seek damages pursuant to Title 42 U.S.C. §1983, et seq.

55     A reasonably prudent officer would have known that Plaintiff was not subject to a wrongful incarceration.

56     By reason of the acts alleged above, Plaintiff did sustain great emotional distress and shock and injury to his person and nervous system, all to his damages in an amount to be proven at trial.

57     As a direct and proximate result of the acts and omissions alleged herein, the Plaintiff is entitled to general and special damages from Officer RAYAS and DOES 1-15 in an amount to be proven at trial.

58     In doing the acts alleged herein Officer RAYAS and DOES 1-15 acted maliciously and with reckless and callous disregard for the rights and feelings of the

Plaintiff and by reason thereof the Plaintiff demands exemplary and punitive damages in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**FOURTEENTH AMENDMENT / WRONGFUL INCARCERATION**
**AGAINST RAYAS And DOES 1-15**

59     Plaintiff refers to and incorporates by reference Paragraphs 1 through 44 as though fully set forth herein.

60     The imprisonment of Plaintiff on a warrant meant for another, violated his Fourteenth Amendment right in that as alleged above, official and reliable law enforcement information, including reliable fingerprint matched identifiers and other information to which had or which they had easy access with virtually no appreciable effort or cost, excluded Plaintiff as the subject of the warrants on which he was incarcerated. Therefore, Plaintiff is entitled to recover damages for the wrongful incarceration pursuant to Title 42 U.S.C. §1983, et seq.

61     A reasonably prudent officer would have known that Plaintiff was not subject to a wrongful incarceration.

62     By reason of the acts alleged above, Plaintiff did sustain great emotional distress and shock and injury to his person and nervous system, all to his damages in an amount to be proven at trial.

63     As a direct and proximate result of the acts and omissions alleged herein, the Plaintiff is entitled to general and special damages from Officer RAYAS and DOES 1-15 in an amount to be proven at trial.

64     In doing the acts alleged herein Officer RAYAS and DOES 1-15 acted maliciously and with reckless and callous disregard for the rights and feelings of the Plaintiff and by reason thereof the Plaintiff demands exemplary and punitive damages in an amount to be proven at trial.

///

///

**FOURTH CLAIM FOR RELIEF**
**NEGLIGENCE, UNDER CALIFORNIA LAW**
**AGAINST ALL DEFENDANTS**

65      Plaintiff refers to and incorporates by reference Paragraphs 1 through 44 as though fully set forth herein.

66      By the acts alleged above, Defendants were negligent and breached their duty of due care owed to Plaintiff, thereby causing the injuries and severe emotional distress as described in the aforementioned Factual Allegations.  Plaintiff is therefore entitled to general and compensatory damages in an amount to be proven at trial.

67      By reason of the acts alleged above, Plaintiff did sustain great emotional distress and shock and injury to his person and nervous system, all to his damages in an amount to be proven at trial.

68      As a direct and proximate result of the acts and omissions alleged herein, Plaintiff is entitled to general and special damages from the Defendants in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**CAL. CONST. ART. I § 13**
**WRONGFUL INCARCERATION and/or FALSE ARREST**
**AGAINST ALL DEFENDANTS**

69      Plaintiff refers to and incorporates by reference Paragraphs 1 through 44 as though fully set forth herein.

70      The arrest and incarceration of Plaintiff as described herein violated his rights protected under Art. I § 13 of the California Constitution. Therefore, Plaintiff is entitled to recover damages for the wrongful imprisonment. See Sullivan v. County of Los Angeles, 12 Cal.3d 710 (1974)

71      By reason of the acts alleged above, Plaintiff did sustain great emotional distress and shock and injury to his person and nervous system, all to his damage in an amount to be proven at trial.

72      As a direct and proximate result of the acts and omissions alleged herein, Plaintiff is entitled to general and special damages from the Defendants in an amount

1    to be proven at trial.

2    73    In doing the acts alleged herein Officer RAYAS and DOES 1-15 acted

3    maliciously and with reckless and callous disregard for the rights and feelings of

4    Plaintiff and by reason thereof Plaintiff demands exemplary and punitive damages in

5    an amount to be proven at trial.

6                          **SIXTH CLAIM FOR RELIEF**
                    **VIOLATION OF CIVIL CODE § 52.1(b)**
7                        **AGAINST ALL DEFENDANTS**

8    74    Plaintiff refers to and incorporates by reference Paragraphs 1 through 44 as

9    though fully set forth herein.

10   75    By their acts, omissions, customs, and policies, Defendants, and each of them,

11   acting in concert/conspiracy, as described above, and with threat, intimidation, and/or

12   coercion, violated Plaintiff's clearly established rights under California Civil Code §

13   52.1, the United States Constitution and California Constitution and law as alleged

14   herein.

15   76    By reason of the acts alleged above, Plaintiff did sustain great emotional distress

16   and shock and injury to his person and nervous system, all to his damages in an amount

17   to be proven at trial.

18   77    As a direct and proximate result of the acts and omissions alleged herein,

19   Plaintiff is entitled to general and special damages from the Defendants in an amount

20   to be proven at trial.

21   78    In doing the acts alleged herein Officer RAYAS and DOES 1-15 acted

22   maliciously and with reckless and callous disregard for the rights and feelings of the

23   Plaintiff and by reason thereof the Plaintiff demands exemplary and punitive damages

24   in an amount to be proven at trial.

25                          **PRAYER FOR RELIEF**

26          WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

27          1.    For general and compensatory damages against all Defendants in an

28   amount to be proven at trial;

2.     For exemplary and punitive damages against Officer RAYAS and DOES 1-15 in an amount to be proven at trial;

3.     For costs of suit herein, including reasonable attorneys fees pursuant to 42 U.S.C. § 1988 and/or Civil Code § 52.1; and

4.     For such other and further relief as the Court deems proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims for relief.

Respectfully Submitted,

Dated: October 1, 2024              s/ Keith H. Rutman
                                    KEITH H. RUTMAN
                                    Attorney for Plaintiff
                                    WILLIAM DONALD PIXLER II
                                    Email: krutman@krutmanlaw.com

18