

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM DONALD PIXLER II,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, SDPD OFFICER RAYAS (#1680) and DOES 1-15<br><br>Defendants. | Case No.: 3:24-cv-1752-JAH-MSB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [ECF No. 17]** |

## **INTRODUCTION**

Pending before the Court is Defendant County of San Diego's ("Defendant" or "County of San Diego") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 13 ("Motion" or "Mot."). Plaintiff William Donald Pixler II ("Plaintiff"), by and through his attorney of record, filed a response in opposition to the Motion on January 27, 2025. ECF No. 18 ("Opposition" or "Opp'n"). Defendant filed a reply in support of its Motion on February 12, 2025. ECF No. 20 ("Reply"). Defendant's Motion is decided on the parties' briefs without oral argument pursuant to Civil Local Rule 7.1.d.1. After a thorough review of the parties' submissions and for the reasons discussed

below, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss.

## BACKGROUND

On October 1, 2024, Plaintiff originally filed a Complaint against the City of San Diego, the County of San Diego, San Diego Police Department ("SDPD") Officer Rayas, and Does 1-15 asserting various civil rights claims arising under 42 U.S.C. Section 1983 and several state law claims. ECF No. 1. Subsequently, on December 5, 2024, Plaintiff filed a First Amended Complaint ("FAC") against the County of San Diego and DOES 6-15. ECF No. 14. Plaintiff describes DOES 6-15 as the booking deputies employed by the County Sheriff's office who received him upon his arrival at the county jail. FAC ¶ 38. In this Amended Complaint, Plaintiff asserts the following claims: (1) 42 U.S.C. Section 1983: Fourth/Fourteenth Amendments/Wrongful Incarceration against Does 6-15; (2) Negligence under California Law against Defendants County of San Diego and Does 6-15; (3) California Constitution Article 1 § 13: Wrongful Incarceration and/or False Arrest against Defendants County of San Diego and Does 6-15; (4) California Civil Code Section 52.1 against Defendants County of San Diego and Does 6-15; and (5) Request for Declaratory Relief under California Law against Defendants County of San Diego and Does 6-15.

Plaintiff alleges he suffers from bipolar schizophrenia and, since receiving this diagnosis, he has had several encounters with law enforcement that have resulted in Plaintiff being placed on several holds in psychiatric facilities. *Id*. ¶ 32. He alleges, on August 22, 2023, several SDPD officers contacted Plaintiff while he was sitting naked on a wall along the Pacific Beach boardwalk. *Id*. ¶ 33. Officers were unable to identify Plaintiff who did not have a wallet or cell phone. *Id*. ¶ 33. Plaintiff further alleges they compared him to the physical identifiers of a person with an outstanding felony warrant, determined he was the individual and booked and jailed him under the name Michael Vincent Buckholz. He alleges he remained in custody for forty-nine days until he was able to telephone his parents. *Id*. ¶¶ 33, 43. He seeks damages and declaratory relief.

# LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). A claim is "plausible" when the facts permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 678. In other words, "the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotations and citations omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

# DISCUSSION

Defendant seeks dismissal on the grounds that: (1) the complaint fails to articulate sufficient facts to support a constitutional violation under the Fourth or Fourteenth Amendments as required by 42 U.S.C. Section 1983; (2) the County of San Diego is immune from direct liability for state law tort claims and claims arising under the Bane Act; and (3) the Doe Defendants are entitled to Qualified Immunity. ECF No. 17 at 1-2.

## I. Request for Judicial Notice

Defendant requests the Court take judicial notice of a copy of the warrant on which Plaintiff was arrested, and a two-page document showing that Plaintiff signed his name to a legal document for Mr. Buckholz's case. ECF 17-2 at 1-2. Plaintiff does not respond to Defendant's request for judicial notice.

A district court may take judicial notice of facts that are generally known within its jurisdiction, or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. CIV. P. 201(b)(2). Further, a court may take judicial notice of undisputed matters of record, including documents on file in both federal and state courts. *Harris v. County of Orange*, 682 F.3d 1126, 1131-1132 (9th Cir. 2012). Additionally, "documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents." *Id*.

Neither party calls into question the authenticity of the document. Plaintiff does not address Defendant's request for judicial notice but does reference the contents of the two-page document signed by Plaintiff in support of his argument that further investigation into his identity was required. Opp'n at 8, 10. Plaintiff does not mention the two-page document in his complaint, but it is implicated by Plaintiff's allegations surrounding his plea of guilty to the violations of law relevant to the warrant. FAC ¶ 39. Additionally, the warrant is mentioned several times in the FAC and serves as the predicate for Plaintiff's arrest, which is at the core of his allegations against the County and the County Doe Defendants. *See generally* FAC.

Because the documents are matters of public record filed in state court, and neither party questions their authenticity and the FAC references the warrant, the requested documents satisfy the requirements for judicial notice. *See Harris*, 682 F.3d at 1132. Accordingly, Defendant's request for judicial notice is **GRANTED.**

## II. SECTION 1983 CLAIMS

Plaintiff asserts his Section 1983 claims against the County Doe Defendants only. Defendant contends Plaintiff's Fourth Amendment claim fails because Plaintiff does not allege the County Doe Defendants participated in his arrest. Mot. at 4. Because a Fourth

Amendment violation is premised on the initial arrest, Defendant argues, the County officers are not the correct defendants for the Fourth Amendment violation claim. *Id*. Defendant also attacks Plaintiff's Fourteenth Amendment claims on the grounds that Plaintiff was not denied access to the courts for an extended period of time, the circumstances during the arrest and booking did not warrant further investigation of mistaken identity, and that any duty to investigate a claim of mistaken identity ended once Plaintiff appeared in court and was held in custody pursuant to a valid court order. *Id*. at 3-4.

To state a claim under Section 1983, a plaintiff must: (1) allege the violation of rights secured by the Constitution and federal laws, and (2) show that the alleged deprivation was committed by a person acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Where a Plaintiff seeks to hold a public employee liable for violating his rights under Section 1983, a Plaintiff must plead sufficient facts that establish how "each Government-official defendant, through the official's own individual actions" has violated Plaintiff's Constitutional rights. *Iqbal*, 556 U.S. at 676. These allegations must be "individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Plaintiffs must show that an individual defendant "[performed] an affirmative act, participate[d] in another's affirmative acts, or omit[ted] to perform an act which he is legally required to do that causes the deprivation of the Constitutional right claimed to be violated." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). A court will dismiss a Section 1983 claim against a Doe Defendant where the complaint does not "even minimally explain how any of the unidentified parties [the plaintiff] seeks to sue personally caused a violation of [the plaintiff's] constitutional rights." *Lomeli v. Cnty. of San Diego*, 637 F.Supp.3d 1046, 1057 (S.D. Cal. 2022) (citing *Estate of Serna v. Cnty. of San Diego*, 2022 WL 827123 at *3 (S.D. Cal. 2022).

//
//

A. <u>FOURTH AMENDMENT CLAIM</u>

Defendant argues that because a Fourth Amendment claim is predicated upon the initial arrest and Plaintiff's arrest was not effectuated by the County, and he does not challenge or question the validity of the warrant on which Plaintiff was arrested, the County is the incorrect party against whom to assert a Fourth Amendment Claim. Mot. at 4. Plaintiff does not respond to Defendant's arguments. However, in his complaint, Plaintiff relies on *Manuel v. City of Joliet, Illinois*, 580 U.S. 357 (2017) to support his assertion that a person's wrongful pretrial detention may be challenged under the Fourth Amendment. FAC ¶ 48. In *Manuel*, the court found the plaintiff's Fourth Amendment claim was not lost despite the legal process going forward because the plaintiff's arrest and subsequent detention was based on probable cause supported by entirely fabricated evidence. *Id*. at 367-368. Further, the plaintiff in *Manuel* alleged his claims against only the city and several of the city police officers that arrested him. *Id*. at 362.

*Manuel* is not analogous to the facts of this case. Here, officers arrested Plaintiff pursuant to a valid warrant for another individual. FAC ¶¶ 36, 38. Thus, this case is not one in which "[l]egal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement. . . [a]nd for that reason. . .cannot extinguish the detainee's Fourth Amendment claim. . . ." *Manuel*, 580 U.S. at 367.

Plaintiff also relies on *Garcia v. Cnty. of Riverside*, 817 F.3d 635, 641-642 (9th Cir. 2016) to support his Fourth Amendment claim against the County Doe Defendants. FAC ¶ 48. *Garcia* focuses its analysis entirely on whether the Plaintiff pled a Fourteenth Amendment Due Process claim for his wrongful incarceration predicated on mistaken identity, and whether the County defendants and individual officers can assert qualified or quasi-judicial immunity. *Id*. at 643-645. Accordingly, Plaintiff's reliance on *Garcia* is misplaced and provides no support for his contention that he may assert a claim for violation of the Fourth Amendment against County Doe Defendants.

While the legality of a plaintiff's initial arrest is analyzed under the Fourth Amendment, post-arrest wrongful incarceration claims based on mistaken identity against

the non-arresting agency are analyzed under the Fourteenth Amendment. *Rivera v. Cnty. of Los Angeles*, 745 F.3rd 348, 390-391; *see also Lee v. City of Los Angeles*, 250 f.3d 668, 683-685 (9th Cir. 2001) (analyzing the initial arrest under the Fourth Amendment but analyzing the post-arrest incarceration under the Fourteenth Amendment).

In the FAC, Plaintiff alleges that on the day of his arrest, he was sitting naked on a wall along the Pacific Beach boardwalk when an interaction and subsequent altercation with members of the public resulted in SDPD being summoned to the scene. FAC ¶ 33. Plaintiff was subsequently contacted by an unknown SDPD officer and was taken into custody without incident. *Id*. Officers were informed by the members of the public who interacted with Plaintiff what occurred and suggested that mental health intervention was appropriate, to which the officers agreed. *Id*. ¶ 34. Because Plaintiff lacked a cellphone or wallet which could be used to identify him, one officer attempted to determine Plaintiff's identity by scanning his fingerprints with a handheld fingerprint scanner. *Id*. ¶ 36. Because Plaintiff's fingers were wet, the scanner was ineffective. *Id*. While at the scene, other officers were reviewing arrest warrants that may have matched Plaintiff's physical characteristics to see if he was wanted for any other offenses. *Id*. They located a warrant for Michael Vincent Buckholz, who was described as a white male, fifty-one years old, having short dark hair, six foot and two inches tall, and weighing 210 pounds. *Id*. Plaintiff was thirty-three years old at the time, is also a white male with short dark hair, but is five foot and eleven inches and weighs 175 pounds. *Id*. The officers determined that Plaintiff was "definitely" the subject of the warrant and transported him to the San Diego County Jail to be booked on the warrant. *Id*. ¶¶ 37, 38. Plaintiff alleges that he is unaware of what information the SDPD officers relayed to the booking deputies upon his arrival. *Id*. ¶ 38. Shortly after being placed in the custody of the deputies, Plaintiff's photograph and fingerprints were taken and were transmitted to the California Department of Justice ("CDOJ"). *Id*. Although he has different fingerprints and other biometric information than Buckholz, he was booked on Buckholz's warrant. *Id*.

//

    Plaintiff pleads no facts that demonstrate the county booking deputies participated in Plaintiff's initial arrest. Rather, by the time Plaintiff arrived at the county jail and was booked by Doe Deputies, SDPD officers had already completed his arrest. Whether the circumstances should have indicated to the County Doe Defendants at that time that further investigation as to Plaintiff's identity was necessary is a question that is analyzed under the Fourteenth Amendment. *Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 619 (9th Cir. 2014).

    Therefore, Defendant's motion to dismiss Plaintiff's Section 1983 claim arising under the Fourth Amendment against the County Doe Defendants is **GRANTED**.

B. <u>FOURTEENTH AMENDMENT CLAIM</u>

    Defendant challenges Plaintiff's Fourteenth Amendment claim on several grounds. First, Defendant argues Plaintiff was not denied access to the courts for an extended period of time because plaintiff was brought to court within eight days from being booked on the warrant. Mot. at 4-5. Second, Defendant argues the circumstances of the arrest did not warrant further investigation primarily because Plaintiff never protested his misidentification and "there were no circumstances that would have led defendants to feel that further investigation was needed." Mot. at 5. Third, Defendant argues because Plaintiff was jailed pursuant to a valid court order after August 30, 2023, the deputies no longer had any duty to investigate claims of mistaken identity or whether the court order was valid. Mot. at 6.

    An individual has a liberty interest in being free from incarceration absent a criminal conviction. *Baker v. McCollan*, 443 U.S. 137, 144 (1979). As such, an individual's mistaken incarceration "after the lapse of a certain amount of time" may give rise to a claim under the Due Process Clause of the Fourteenth Amendment. *Id*. at 145. Claims of wrongful incarceration because the plaintiff was entitled to release fit into at least one of two categories: (1) the defendants denied the plaintiff access to the courts for an extended period of time, or (2) the circumstances indicated to the defendants that further investigation was warranted. *Rivera,* 745 F.3d at 390-391.

//

1. DENIED ACCESS CATEGORY OF WRONGFUL INCARCERATION CLAIM

In his FAC, Plaintiff alleges the county officers failed to bring him to court within two days from his arrest as required by Section 825 of the California Penal Code. FAC ¶ 39. Defendant argues because Plaintiff was arrested pursuant to a warrant for a post release community supervision violation ("PRCSV"), the applicable statutes are California Penal Code Sections 3455 and 1203.2, which set reasonableness as the standard for when an arrestee must be brought to court. Mot. at 4-5. Defendant contends that, "[t]here is nothing in the complaint to suggest that the eight days for Plaintiff to obtain a hearing was unreasonable or prejudiced him to an extent that violated his due process rights." *Id*. at 5. In his Opposition, Plaintiff merely reiterates that he did not see a judge for eight days after being detained on the warrant. Opp'n at 14.

Section 825 of the California Penal Code requires that "the defendant shall in all cases be taken before the magistrate without unnecessary delay, and, in any event, within 48 hours after his or her arrest, excluding Sundays and holidays." California Penal Code Section 1203.2 allows an officer to arrest a person that the officer has probable cause to believe is violating the terms or conditions of the person's post release community supervision, and the court is permitted to modify or revoke or terminate such supervision. *See* Cal. Pen. Code Sec. 1203.2(a), (b). Upon such an arrest, the supervising agency has the authority to hold the person in custody until the first court appearance based on a showing by a preponderance of the evidence that such confinement is necessary. *See* Cal. Pen. Code Sec. 3455(c). The revocation hearing is to be held "within a reasonable time" after the filing of the revocation petition. *Id*.

In the FAC, Plaintiff alleges the CDOJ assigns a unique identifying number to anyone booked into a California jail called a "CII number" which is matched to an arrestee's fingerprints. FAC ¶ 8. Any subsequent bookings of the individual will be under the same CII number. *Id*. He further alleges after he was photographed, fingerprinted and booked on Buckholz's warrant and held in custody without appearing before a judge for

eight days despite a statutory requirement under Section 825 of the California Penal Code that he be arraigned within two days after his arrest. *Id*. ¶ 39. He asserts that "he was not arraigned on any new charges[,]" and that he was subsequently "brought to court for a hearing on his probation/supervision violation." *Id*.

As such, Section 3455(c) instructs Defendants to bring Plaintiff to court "within a reasonable time" as opposed to the 48-hour period required by Section 825. However, Section 3455(c) suggests a person arrested for a PRCSV is not always detained during the period they await a court hearing for that violation. It permits the person to be held in custody where the agency demonstrates, "based on a showing of a preponderance of the evidence that a person poses an unreasonable risk to public safety, or that the person may not appear if released from custody, or for any reason in the interests of justice." *Id*.

In light of Plaintiff's allegations regarding his mental health crisis, the use of CII numbers during the booking process and his fingerprinting, the Court finds Plaintiff had a liberty interest in being free from the eight-day incarceration. *See Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (Finding a liberty interest in being free from a twelve-day incarceration.). Therefore, Defendant's motion to dismiss Plaintiff's Fourteenth Amendment denial of access claim is **DENIED.**

2. FURTHER INVESTIGATION OF CATEGORY WRONGFUL INCARCERATION CLAIM

Defendant argues because SDPD effectuated Plaintiff's initial arrest and Plaintiff never raised the issue of misidentification, "there were no circumstances that would have led defendants to feel that further investigation was needed." Mot. at 4. Defendant also argues after Plaintiff's court appearance deputies no longer had any duty to investigate claims of mistaken identity or whether the court order was valid. *Id*. at 6. Plaintiff argues three facts in his FAC establish the Doe Defendant's duty to investigate, including: "(1) [Plaintiff's] fingerprints did not match those of the subject of the warrant, (2) [he] was 3 inches shorter, 18 years younger, and 35 pounds lighter than the person wanted in the warrant; and (3) [he] was undergoing a mental health crisis and incapable of demanding an

investigation." Opp'n at 14. Without cite to authority, Plaintiff also contends that "the Court-ordered incarceration", at most, "truncate[s]" liability. *Id*. at 10.

To sufficiently allege a claim under the "further investigation" category, a plaintiff must allege facts demonstrating significant differences between the arrestee and the subject of the warrant that should have alerted government officials that further investigation was necessary to ensure that the arrestee was in fact the same person as the subject of the warrant. *Rivera*, 745 F.3d at 391. However, in bringing such a claim, the plaintiff bears the burden of demonstrating that during the period of his incarceration, it "was or should have been known [by the defendants] that [the plaintiff] was entitled to release." *Gant*, 772 F.3d at 620 (quoting *Lee v. City of Los Angeles*, 250 F.3d at 683). Therefore, a plaintiff's Fourteenth Amendment claim will survive if he successfully alleges the circumstances demonstrated the officers knew or should have known that he was not the subject of the warrant. *See Garcia*, 817 F.3d at 641, 643.

Defendant analogizes this case to *Gant* where the court placed considerable weight on the fact the plaintiff did not alert government officials to the misidentification in determining the plaintiff failed to allege a Fourteenth Amendment claim. 772 F.3d at 620-621. However, this was but one of several facts relevant in determining that Gant did not have a successful Fourteenth Amendment claim. *Id*. Gant was briefly detained for the "sole purpose of appearing in court" and was released the following day immediately after his appearance. *Id*. at 620. While a plaintiff's assertions to government officials that he is not the subject of the warrant is an important factor in determining whether further investigation was necessary, a court's analysis as to whether further investigation was necessary does not end with the presence or lack of "protests of innocence." *Garcia*, 817 F.3d at 642 (physical differences, CII number discrepancy, and complaints of misidentification all factored into finding that further investigation was warranted).

Here, Plaintiff alleges that he was arrested by SDPD and transferred to the custody of the County defendants without his identity having been established, without a scan of his fingerprints, and identified as the subject of the warrant based only on a physical

comparison between himself and the subject of the warrant. FAC ¶¶ 33, 36, 37. Plaintiff is unaware of what information the booking officers knew of him at that time. *Id.* ¶ 38. However, Plaintiff alleges that upon arrival at the county jail facility he had his photograph and fingerprints taken, which were transmitted to the CDOJ in accordance with booking protocol. *Id.* Finally, Plaintiff asserts even though his fingerprints, biometric information, and physical characteristics are not like the warrant subject's, he was booked on the warrant as Mr. Buckholz. *Id.*

Plaintiff sufficiently pleads that the physical differences between him and the warrant subject should have alerted the government officials that further investigation was required. *Rivera*, at 391; *See Moss v. U.S. Secret Service*, 572 F.3d at 969. He also successfully alleges that the circumstances at the time he was transferred to the Doe Defendants demonstrates the officers should have known that he was not the subject of the warrant. *See Garcia*, 817 F.3d at 643. Here, booking deputies received a person who they believed to be Mr. Buckholz, however, inferring that they knew as much as the SDPD officers who arrested Plaintiff did when they received him, they had no information other than Plaintiff's physical characteristics to arrive at this conclusion. FAC ¶ 36. Yet these characteristics did not match the characteristics of Mr. Buckholz as described in the warrant, there was an eighteen-year age difference, a three-inch height difference, and difference in weight of thirty-five pounds. *Id*. Further upon Plaintiff's arrival and subsequent photographing and fingerprinting, his CII number would have been generated as part of the booking process. *Id.* ¶¶ 8, 9. Once Plaintiff's fingerprints were transmitted to CDOJ, CDOJ would have either responded that his unique CII number did not match Mr. Buckholz's—because it is tied to Plaintiff's fingerprints—or would have assigned him a new CII number, signifying that he had not yet been booked at a jail in California. *Id.* ¶ 13. Therefore, upon receiving Plaintiff and going through the booking process, the booking officers were aware that Plaintiff was brought to them without any identifying information, his physical characteristics were different from the warrant, and there was a discrepancy between Plaintiff's CII number and Mr. Buckholz's. Even without protests of mistaken

identity by Plaintiff, Plaintiff sufficiently pleads that the Doe Defendants should have been alerted that further investigation into his identity was necessary. *Rivera*, at 391; *Gant*, 772 F.3d at 620.

However, the Court acknowledges that *Rivera* abrogates the duty of a county defendant who holds a plaintiff in custody to investigate claims of mistaken identity after that plaintiff is held pursuant to a valid court order. 745 F.3d at 392. While Plaintiff successfully pleads that Defendants had a duty to further investigate Plaintiff's identity during the booking process, once he was held pursuant to the August 30, 2023, court order, that duty to investigate ended. *Id*.

Based on the above, Plaintiff adequately pleads that the County Doe Defendants failed to accord him minimum due process despite circumstances that warranted further investigation into his identity. Therefore, Defendant's motion to dismiss Plaintiff's Fourteenth Amendment Claim is **DENIED**.

### 3. QUALIFIED IMMUNITY OF DOE DEFENDANTS

Defendant argues that the Doe Defendants are entitled to qualified immunity because "there was no clearly established law at the time that would make it clear to a reasonable officer, under the circumstances facing these defendants, that their conduct was unlawful." Mot. at 9. They further argue because Plaintiff made no complaint of mistaken identity and he was later held pursuant to a lawful court order, this case is distinguishable from other mistaken identity cases. *Id*. Plaintiff argues that Ninth Circuit precedent clearly establishes "officers violate the Fourteenth Amendment if they wrongly detain a person where 'circumstances indicated to [them] that further investigation was warranted." Opp'n at 16.

Qualified immunity shields defendants from liability unless the plaintiff's allegations demonstrate (1) a violation of a constitutional right, which (2) was "clearly established" at the time of the defendant's alleged misconduct. *Garcia*, 817 F.3d at 639 (9th Cir. 2016) (Citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Courts may exercise discretion in deciding which prong to address first. *See Pearson*, 555 U.S. at 236.

1  The absence of either prong warrants a finding that immunity exists.  *See Shafer v. Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017).  A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011).

"Plaintiffs bear the burden of proving that a constitutional right 'was clearly established at the time of the incident.'"  *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1151 (9th Cir. 2021).  In considering whether a right is clearly established, courts generally must, "identify a case where an officer acting under similar circumstances [as Defendants] was held to violate [federal law]."  *Shafer v. Santa Barbara*, 868 F.3d at 1117 (quoting *White v. Pauly*, 580 U.S. 73, 77-78 (2017)).  At the pleading stage, the Court resolves the question of qualified immunity "drawing all inferences in [the nonmoving party's] favor."  *Ballou v. McElvain*, 29 F.4th 413, 421 (9th Cir. 2022).  "If the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiffs are 'entitled to go forward' with their claims."  *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) (quoting *Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 872 (9th Cir. 1992).

*Garcia* clearly establishes that "officers violate the Fourteenth Amendment if they wrongly detain a person where 'the circumstances indicated to [them] that further investigation was warranted.'"  817 F.3d at 643 (quoting *Rivera*, 745 F.3d at 391).  As noted above, Plaintiff sufficiently pleads that his wrongful incarceration based on a warrant meant for Mr. Buckholz required further investigation by County deputies.  FAC ¶¶ 36, 37, 38.

Precedent such as *Garcia*, *Rivera*, and *Gant* all stand for the proposition that a significant difference in the physical appearance between a wrongly incarcerated plaintiff and the warrant subject they were mistaken for may, in addition to other considerations, give rise to a duty to further investigate whether the arrestee was the subject of the warrant.  *See Garcia*, 817 F.3d at 641.  In *Rivera*, the court concluded that the plaintiff's misidentification and subsequent arrest on the warrant meant for another person with the

same name, when the plaintiff was one inch taller and ten pounds lighter than the subject of the warrant, did not violate his Fourteenth Amendment Due Process rights. *Rivera*, 745 F.3d at 387, 390-391. The court held that further investigation was not necessary despite the fact that Plaintiff's driver's license depicted these physical differences, and that Rivera had been mistakenly arrested on the same warrant in the past. *Id*. at 386-387, 391.

In contrast, the court in *Garcia* found that although Garcia's first name, last name, and date of birth matched those of the subject of the warrant, because Garcia was nine inches taller and forty pounds heavier, "even a cursory comparison of Garcia to the warrant subject should have led officers to question whether the person described in the warrant was Garcia." 817 F.3d at 641. Further, the defendants failed to use Garcia's fingerprint-matched CII number to verify whether he was the subject of the warrant. *Id*. at 641-642. Concluding that further investigation was warranted, the court denied the defendant qualified immunity. *Id*. at 643-644.

This case is somewhere in between *Rivera* and *Garcia*. While the physical disparity between Plaintiff and the warrant subject is less significant than the physical disparity between the plaintiff and the warrant subject in *Garcia*, it is greater than that in *Rivera*. As noted above, the Doe Defendants should have become aware of the difference in physical characteristics between Plaintiff and Mr. Buckholz and of the discrepancy in their CII numbers assigned to each as part of the booking process. FAC ¶ 36. The two cases are sufficiently analogous to support Plaintiff's right to be free from wrongful incarceration where further investigation was warranted. *See Shafer*, 868 F.3d at 1117-1118.

At this stage, Plaintiff pleads sufficient facts supported by comparable precedent to establish that by taking custody of Plaintiff, without knowing his name or identity, on a warrant for a man eighteen years older, three inches taller, and thirty-five pounds heavier, and subsequently taking and transmitting his fingerprints to the CDOJ which did not match the warrant subject's, Defendants violated Plaintiff's Fourteenth Amendment rights. *Id*. at 641-644. Accordingly, the County Doe Defendants are not entitled to Qualified Immunity.

### III. STATE LAW CLAIMS

Defendant argues that the County and the Doe Defendants are immune from Plaintiff's tort claims, negligence, wrongful incarceration and/or false arrest, under California Government Code Sections 815, 815.2 and 844.6. Further, Defendant argues that Plaintiff's Bane Act claims fail because he fails to allege direct liability against the County.

#### A. IMMUNITY

Defendant argues that all government tort liability in California must be based on a statute explicitly declaring such a public entity to be liable for the alleged harm. *See* Mot. at 7. Absent such a statute declaring liability, California Government Code Section 815 abrogates liability for tort claims against a public entity. *Id*. Defendant acknowledges however, that California Government Code Section 815.2 allows a public entity to be vicariously liable for the acts of its employees, but argues, such vicarious liability is inapplicable here because Government Code Section 844.6 immunizes the County from liability whether plaintiff alleges direct or vicarious liability. *Id*.

Citing *Sullivan v. Cnty. of Los Angeles*, 12 Cal. 3d 710 (1974), Plaintiff argues the County can be held vicariously liable for state law tort claims if a single deputy is found liable. Opp'n at 17.

#### 1. NEGLIGENCE CLAIM

Under California law, a public entity is not liable for an injury arising out of an act or omission by the entity or its employees unless a statute specifically provides otherwise. Cal. Gov. Code Sec. 815 (a)-(b). A public entity is vicariously liable for an injury that is proximately caused by an act or omission of an employee of the public entity within the scope of their employment, except where the employee is immune from liability. Cal. Gov. Code Sec. 815.2 (a)-(b); *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175, 1179-1180 (stating that while a plaintiff must identify a specific statute to allege direct liability against a public entity, a public entity is still vicariously liable for an employee's negligent acts or omissions within the scope of employment).

However, Section 844.6 of the California Government Code provides immunity to public entities for any injury to a prisoner. It does not immunize a public employee "from liability for injury proximately caused by his negligent or wrongful act or omission." Cal. Gov. Code. Sec. 844.6(a)(2), (d). Therefore, public entities are immune from claims for injury to a prisoner, on either a direct or vicarious liability theory, absent some statute otherwise allowing liability to attach. See *Bousman v. City of San Diego*, 2024 WL 1496220 at *11 (S.D. Cal) (dismissing plaintiff's state law negligence claims against public entity for death to prisoner based on tort law theories, but permitting negligence claims to proceed insofar as it would be vicariously liable for employees' alleged failure to summon immediate medical care under California Government Code Section 845.6).

Relying on *Sullivan*, Plaintiff asserts the County can be derivatively liable for the Doe Defendant's failure to release him. Opp'n at 17. In *Sullivan*, the California Supreme Court considered whether the plaintiff's claim for false imprisonment against the county was barred by California Government Code Section 844.6. 12 Cal.3d at 715-717. Sullivan was held in county jail several days past the conclusion of his misdemeanor sentence and a pending release order for him by the municipal court issued to the sheriff. *Id*. at 714. Sullivan sued the county of Los Angeles for false imprisonment based on the sheriff's failure to release him. *Id.* The County asserted immunity under Section 844.6, contending that because Sullivan was a prisoner, the county was immune from liability for any "injury" caused to him. *Id.* at 716.

The California Supreme Court rejected the argument that Section 844.6 barred recovery for false imprisonment, because Sullivan was no longer a "prisoner" at the time he was falsely imprisoned. *Id.* at 716-717. The court held that in the context of a false imprisonment claim, "the 'injury' suffered by an individual is the illegal confinement itself[,]" and despite the fact that Sullivan was already confined in jail at the time the claim arose, "the Legislature surely did not intend to distinguish between an individual who is wrongfully deprived of his liberty before his jail term starts and one wrongfully deprived of his liberty after his jail term ends." *Id.* The court reasoned that "[c]ontinued

confinement cannot legally make him a 'prisoner' when the jail term has expired; in the eyes of the law plaintiff is no longer a 'prisoner.'" *Id.* at 717. The court concluded because Sullivan was not a prisoner, Section 844.6 did not immunize the County from Sullivan's claim for false imprisonment. *Id.*

Similar to *Sullivan*, the harm suffered by Plaintiff in this case was the confinement itself. *Id.* at 716. By arresting and confining Plaintiff on the warrant for Mr. Buckholz, the injury Plaintiff suffered was "an injury to a non-prisoner which convert[ed] him into a prisoner." *Id.* Therefore, Plaintiff stands in the same position as the claimant in *Sullivan* as one who was "wrongly deprived of his liberty[,]" and pursues a legal remedy for such deprivation. *Id.* at 717. Therefore, Section 844.6 does not apply.

Plaintiff successfully alleges that at the time the Doe Defendant's obtained custody of him, further investigation into his identity was necessary. Because Section 815.2 would permit the county to be vicariously liable for its employee's actions Plaintiff pleads sufficient facts that would support liability against both the Doe Defendants and the County. Cal. Gov. Code Sec. 815.2; *See Sullivan*, 12 Cal.3d at 717.

Accordingly, Defendant's motion to dismiss Plaintiff's second claim for relief is **DENIED.**

2. WRONGFUL INCARCERATION CLAIM UNDER CAL. CONST. ARTICLE I § 13

Article I Section 13 of the California Constitution contains the state analogue to the Fourth Amendment. *See White v. City of Laguna Beach*, 679 F.Supp.2d 1143, 1159 (C.D. Cal. 2010). Unlike the Fourth Amendment however, it is not clearly established in either California or Ninth Circuit precedent whether Article I Section 13 confers a private right of action for damages, and many district courts within the Ninth Circuit are split on this issue. *See Rios v. County of Sacramento*, 562 F.Supp.3d 999, 1021 (E.D. Cal. 2021). This Court has determined that this Section of the California Constitution does not confer a private right for damages. *See Agro Dynamics, LLC v. United States*, 692 F.Supp.3d 1003, 1020 (S.D. Cal. 2023). Accordingly, the Court **DISMISSES** the claim with prejudice.

B. <u>BANE ACT CLAIM</u>

Defendant argues Plaintiff's Bane Act claim fails to the extent it asserts the County is directly liable because the Act creates liability against "a person or persons" and does not explicitly grant liability against a public entity. Mot. at 7. Further, Defendant contends that "courts have rejected a theory that statutes imposing liability on individuals also impose direct liability on a public entity." *Id*. Plaintiff does not respond to Defendant's argument against direct county liability, arguing only that "a local government can be vicariously liable for its employees' Bane Act violations under a theory of respondeat superior." Opp'n. at 17.

California Civil Code Section 52.1 provides a cause of action for damages against any "person or persons" who interferes or attempts to interfere "by threat, intimidation, or coercion" with another's exercise or enjoyment of their civil rights. Cal. Civ. Code § 52.1(b). To support direct liability against a public entity, such liability must be based on statute. Cal. Gov. Code § 815; *Cochran v. Herzog Engraving Co.*, 155 Cal.App.3d 405, 409 (1984). Section 52.1 does not provide a statutory exception to general immunity provisions of California Government Code Section 815 immunity and therefore cannot form the basis for direct liability against a public entity. *Towery v. State of California*, 14 Cal.App.5th 226, 231-233 (2017).

However, unlike federal Section 1983 claims, public entities can be held vicariously liable for their employees' violations of Section 52.1. *Cameron v. Craig*, 713 F.3d 1012, 1023 (9th Cir. 2013). Therefore, absent any immunity applicable to a public employee, a County defendant may be liable for its employees' violations of a plaintiff's rights under Section 52.1. *Id*. at 1023-1024; *See* Cal. Gov. Code § 815.2.

Accordingly, Defendant's motion to dismiss Plaintiff's fourth claim for relief, to the extent it alleges direct liability against the County is **GRANTED.** The claim against the Doe Defendants and the claim against the County under a theory of vicarious liability survives.

//

**CONCLUSION AND ORDER**

Based on the foregoing, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

2. The motion is **GRANTED with leave to amend** as to Plaintiff's Fourth Amendment claim arising under his first claim for relief.

3. Plaintiff's third claim for relief for wrongful incarceration and/or false arrest under Article I Section 13 of the California Constitution and fourth claim for relief to the extent it alleges direct liability against County of San Diego are **DISMISSED with prejudice**.

4. The motion is **DENIED** as to Plaintiff's first claim for relief for violation of the Fourteenth Amendment, Plaintiff's second claim for relief for negligence against both the Doe Defendants and the County, and Plaintiff's fourth claim for relief for the alleged violations of California Civil Code Section 52.1. against the Doe Defendants and against the County under a theory of vicarious liability.

5. Plaintiff may file a Second Amended Complaint to cure the deficiencies noted above **on or before June 30, 2025.**

DATED: May 22, 2025

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE